**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2666-19

SUNDEEP SINGH SEKHON,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

AMRITA AMY SEKHON,
n/k/a SAINI,

      Defendant-Respondent/
      Cross-Appellant.

_____

> Submitted March 22, 2021 – Decided April 30, 2021
>
> Before Judges Rothstadt and Susswein.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Atlantic County, Docket No. FM-01-0563-11.
>
> Susan M. Korngut, attorney for appellant/cross-respondent.
>
> Helmer, Conley & Kasselman, PA, attorneys for respondent/cross-appellant (Barbara F. Dumadag, of counsel and on the briefs).

PER CURIAM

In this post-judgment dissolution matter, plaintiff Sundeep Singh Sekhon and defendant Amrita Amy Sekhon, now known as Amrita Amy Saini, appeal from the Family Part's January 27, 2020 order. In the order, the motion judge increased plaintiff's child support for the parties' two children, denied his motion to compel defendant to contribute to the transportation expense associated with his parenting time or towards payment for a parent coordinator, and denied his request for sanctions and counsel fees. The judge entered the order for the reasons stated in her seventeen-page memorandum of decision that was issued with the order under appeal.

On appeal, plaintiff argues that the judge committed "plain error" by recalculating his support obligation without imputing income to defendant, by not compelling defendant to make the payments he sought towards travel expenses and a parent coordinator, and by refusing to impose sanctions and award counsel fees against defendant. In her cross appeal, defendant argues the judge did not provide sufficient reasons for the limited amount of additional support that was ordered, which, in any event, was inadequate.

A-2666-19

We disagree with the parties' contentions on appeal and affirm, substantially for the reasons stated by the motion judge in her detailed written decision.

After marrying in 2004, the parties had two children, a son born in 2006 and a daughter in 2008. They divorced in August 2012. Their judgment of divorce incorporated their two 2012 agreements—one as to custody and parenting time, and the other as to support and property distribution. The agreements contemplated defendant's relocation to Canada with the children.

Under the child support and property distribution agreement, plaintiff was to pay to defendant $500 per week and the parties were both obligated to pay for additional child-related expenses "in proportion to the parties' respective percentage shares of their respective net incomes as reflected on" an attached child support guideline (Guidelines)[1] worksheet (Guidelines Worksheet). Plaintiff was also required to maintain health insurance for the children, and to be responsible for those unreimbursed health-related expenses defined in the parties' agreement. Among defendant's obligations under section 3.20 of the

---

[1] See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2021).

custody and parenting time agreement, she was to share equally in the costs associated with the children's travel for parenting time with plaintiff.

According to the worksheet, plaintiff's income was $719,992 annually and defendant had an imputed income of $20,000, as she had never been employed. The worksheet also assumed 104 overnights with plaintiff and acknowledged that the amount agreed to for support was higher than the amount provided for the highest incomes subject to the Guidelines.

Prior to the entry of the judgment of divorce, defendant relocated with the children to Canada. According to plaintiff, after the relocation, defendant began to interfere with plaintiff's parenting time and would not share in transportation expenses as required by the parties' agreement.

Six years after the divorce, in May 2018, defendant filed a motion seeking an increase in plaintiff's child support obligation, and in July 2018, plaintiff filed a cross-motion seeking the denial of defendant's motion and the enforcement of his rights under the parties' custody and parenting time agreement. Plaintiff also sought the imposition of sanctions and an order directing the parties to retain a parent coordinator to deal with their issues.

Defendant's motion was supported by a one-page certification that explained that an increase in child support was required "because the children's

needs had increased" and plaintiff "has increased income and lifestyle [so] the children should be able to live in equal conditions, lifestyle and requirements." She also raised an issue about a $4,583.33 equitable distribution payment that was due in September 2014 but not paid.

Plaintiff's cross-motion was supported by his certification setting forth the facts that he alleged established defendant's violation of the parties' parenting time agreement. As to his response to defendant's motion, plaintiff only stated that it should be denied because she did not comply with Rule 5:5-4(a)(2)'s requirement for including a current case information statement (CIS) with the motion.

Defendant filed another certification, dated August 31, 2018, in which she clarified her employment status and explained that she was not employed at that time. She also addressed plaintiff's claim for transportation costs and stated that there was no proof that plaintiff paid any of those costs, as he probably used travel points to pay for them. Moreover, from the flight information plaintiff provided it appeared that he included charges for his mother, which was not part of the parties' agreement. As to earlier trips, he deducted costs from the equitable distribution payments he had made to defendant.

A-2666-19

At oral argument on September 7, 2018, the parties addressed both defendants' motion of increased support and plaintiff's claims about defendant interfering with his parenting time. During the proceeding, the judge observed that plaintiff had consented to the children's relocation with the understanding the parties would comply with their parenting time agreement. She told the parties she would not "accept[] any excuse" for defendant's failure to cooperate.

The judge then proceeded to work out a practical solution to an issue regarding grandparent visitation under the agreement and thanked the parties "for resolving that particular issue." The judge also facilitated a resolution of the issue with the children's daily communication with plaintiff by having everyone agree that such communications would be via the children's iPads.

As to the parent coordinator designated in the parties' agreement, the judge observed that she had not been engaged with the family now for several years. The judge stated that at the parties' next court date she would consider whether to reengage the parent coordinator, whether or not there should "be sanctions for non-compliance," and "any of the other outstanding issues that are right before us at this time."

As to plaintiff's argument regarding defendant's employment, the judge noted that information plaintiff found on the internet about defendant's real

6

estate work was not "proof" and concluded that more information regarding the parties' financials would need to be submitted. With that, the judge observed that only the financial matters were left to be decided after the parties exchanged financial information and submitted it to the judge. Finally, she resolved an issue relating to the children's passports, directing defendant to complete the required form for renewal.

The judge then entered an order granting defendant's request for the recalculation of child support. The order also directed the parties to exchange CISs and gave the parties an opportunity to attempt to resolve the issue between them. In addition, it granted plaintiff's motion for the enforcement of his parenting time rights and directed defendant to comply with the parties' agreement. The order held in abeyance the issues of defendant's contribution to transportation costs, requiring the parties to engage a parent coordinator and to share the costs for those services equally, and plaintiff's motion for attorneys' fees and sanctions, directing the parties to attempt to resolve those issues in advance of returning to court if possible. It also directed the parties to exchange proof of the transportation expenses incurred for parenting time.

When the parties realized they could not resolve their remaining issues, defendant made additional submissions to the judge. Specifically, on October

7

26, 2018 she submitted an updated CIS. It listed her 2017 gross income as $12,000.

On November 14, 2018, the parties appeared again before the judge for oral argument as to the remaining issues. On that day, plaintiff served and filed a supplemental certification and CIS, which included his wife's financial information. In the certification, plaintiff attached documentation he found on the internet dating back to 2014 that indicated defendant had been working at a real estate agency. He also attached travel itineraries for his children's, his, and his mother's traveling that dated back to 2014 which had not been included in his original cross-motion. The itineraries revealed the price for flights but did not disclose if and how they were ever paid by plaintiff.

After considering the parties' arguments, the judge reserved decision. On September 24, 2019, the judge wrote to the parties to request additional submissions involving their financial information.[2] In her letter, she defined the remaining issues to be decided as the recalculation of support, defendant's contribution towards transportation costs, the costs for the parent coordinator "if needed," and "sanctions and counsel fees."

---

[2] At oral argument, defendant's attorney explained that defendant did not file a tax return in Canada. In response to the judge's request, defendant submitted a certification detailing her income.

The parties' submissions also included another certification from defendant, dated November 8, 2019, and a responsive certification from plaintiff dated December 2, 2019. In her certification, defendant explained she temporarily worked in a real estate office but left that position when the requirements for a license were changed. She also advised that she became employed full time with an airline in July 2019. As a result, she was forced to incur childcare expenses because her mother who had previously provided that service could no longer do so. Defendant also explained that after her alimony terminated, she was forced to maintain herself and the children using the assets she received as part of equitable distribution, and help from her family.

In his certification, plaintiff challenged defendant's statements regarding her employment as a real estate agent and her claim she could not finish her license requirement due to a lack of funds. He also requested a decrease in his child support obligations and asked the court to calculate "at least three" overnights per month "consistent with [the] Agreement."

On January 27, 2020, the judge issued her order and an accompanying memorandum on her decision. In her decision, the judge recounted how the original support amount was calculated based on plaintiff's "gross income of $719,992/year as a dentist [and] imputed income of $20,000/year for

[defendant], who did not work during the marriage." The judge also explained that at the time the parties agreed to child support they "deviated from the [Guidelines Worksheet] calculation of $395 and agreed upon $500/week" noting that the parties did so in consideration of the fact "plaintiff's income [was] in excess of the maximum guidelines income amount [and] various [other] divorce issues." She also noted defendant was to receive a limited amount of $80,000 in alimony payable at the rate of $1,500 per week and a "lump sum equitable distribution payment of $110,000 [to be paid] in twenty-four installments of $4,583.33" over two years.

The judge also explained that defendant filed her motion based upon "the passage of time . . . and the termination of alimony." The judge then reviewed the parties' income based upon the financial documents they had submitted.

The judge observed that plaintiff, a dentist, was involved with three different practices and his current, annual "reported income" on his 2018 return was $815,126, and his current wife's income was $79,532. However, applying the Guidelines' analysis for business tax returns, the judge determined that some of the deductions that plaintiff took from his practices were not allowable when determining income for child support purposes. Those deductions went "beyond what is necessary to operate the businesses and . . . are specifically excluded in

accordance with" the Guidelines. She then delineated the expenses that needed to "be added back into [plaintiff's] income." After doing so, the judge determined that plaintiff's "income for child support purposes is $1,336,872."

As to defendant, the judge found that her submissions established that in 2017 and 2018 she earned $12,000 and $2,725, respectively, working "as a real estate agent." The judge observed that currently, defendant was employed by an airline in Canada and earned approximately $22,000 per year. But, while she worked, defendant incurred childcare costs that averaged $450.00 per week. The judge concluded that defendant only earned $21,840 and received a minimal income from her involvement in selling real estate because she only had a limited training in that area.

The judge also concluded that, contrary to plaintiff's contentions, based upon defendant's "lack of employment experience during the marriage and only limited real estate training thereafter, [it was] inappropriate and inequitable to impute additional income to her." For purposes of child support calculation, the judge relied on the income she earned from her full-time employment with the airlines.

The judge preceded to calculate plaintiff's obligation for child support first applying the Guidelines up to the maximum income amount and then

A-2666-19

considering the factors under N.J.S.A. 2A:34-23(a) "to calculate an additional discretionary amount to be added if warranted." Using the financial information supplied to her, the judge gave a detailed explanation of the statutory factors and their applications to the families' income and expenses.

In her calculation of the Guideline amount, the judge gave plaintiff the appropriate credit for his three other children, the reduction in his health insurance contribution, which was no longer required because the children were Canadian residents, and for the reduction in his overnight visitation because of the relocation. Based on these factors, the judge determined that the Guideline maximum amount for plaintiff's contribution totaled $875 per week and found that the amount was "insufficient to meet the needs of the [parties' two] children."

In determining the excess amount of support above the Guidelines amount, the judge used plaintiff's CIS and financial information, reviewed his monthly expenses, and found that they totaled $44,045, leaving plaintiff with $808,332 annually for child support using the judge's calculation of available income or, "$286,586 in excess income for child support," using plaintiff's reported income.

In calculating defendant's and the children's expenses, the judge reviewed defendant's CIS and determined that the household annual budget was $109,680. The judge found that defendant's budget for the children did "not seem particularly excessive in order for her to provide a lifestyle for the children comparable to what they could have had as an intact family, or comparable to what [plaintiff's] younger children enjoy, given [plaintiff's] resources." Based on defendant's "reported income," the judge concluded that there was an annual shortfall of $87,840.

The judge observed that "[w]hile married, the parties enjoyed a high standard of living based on [plaintiff's] income," and that his current wife and younger children now did too. Citing to Caplan v. Caplan, 364 N.J. Super. 68, 90 (App. Div. 2003), she concluded that the parties' children "are entitled to share in [plaintiff's] good fortune and current income." Relying on her calculation of plaintiff's income that was available to support the parties' children, she found it "appropriate to require [plaintiff] to contribute an additional $125.00 per week, for a total obligation of $1,000 per week."

The judge made the award retroactive to May 16, 2018, and fixed plaintiff's arrears in the amount "of over $40,000." She stated that "an accurate amount of arrears will [be] compute[d] upon the filing of the order." In the

13

meantime, she ordered the plaintiff to pay an additional $500 per week toward the arrears.

The judge then addressed the remaining issues raised by the parties. She did not order defendant to contribute towards plaintiff's parenting time expenses because plaintiff did not "provide documentation detailing the expenses" or otherwise "provide the court with information to support this request." As to the parent coordinator, the judge observed that although years earlier the parties had discussed retaining a parent coordinator one was never retained and for that reason the issue was now "moot." However, the judge directed that "if the parties desire to engage a [p]arent [c]oordinator, they should follow the cost sharing agreement contained in the [c]ustody [a]greement."

The judge also denied plaintiff's request for sanctions, citing Rule 5:3-7(a). She also denied plaintiff's request for counsel fees after considering the factors stated in Rule 4:42-9, RPC 1.5(a), and Rule 5:3-5. The judge concluded that plaintiff was in a far superior financial position than defendant, and as to "the reasonableness of the positions taken in this motion," the judge noted that plaintiff did not prevail on his "[e]nforcement [m]otion,"[3] while defendant

---

[3] As reflected in the order, plaintiff's requests to compel defendant to contribute 50% of the transportation costs incurred by his parents and to contribute 50% to

secured an order recalculating the child support based upon her demonstrating a change in circumstances, including plaintiff's "changed employment and family structure." For those reasons, she denied plaintiff's application. This appeal followed.

We begin our review by addressing the parties' cross contentions about the judge's increasing plaintiff's child support obligation. Plaintiff contends the judge should have dismissed the motion based upon defendant's failure to provide a CIS in her original application or alternatively, in the calculation of income, the judge should have imputed an increased amount of income to defendant. In addition, he argues it was improper for the judge to consider defendant's childcare costs and limit her review of his income to one year because his earnings fluctuated. According to plaintiff, the judge overlooked the fact that defendant had not been truthful with the judge because she did not fully disclose her employment with a realtor, failed to closely examine defendant's CIS, including her alleged budget of $9,100 per month, and ignored defendant's failure to submit her tax return. Moreover, plaintiff contends the judge should have ordered discovery.

---

a parent coordinator were denied, as well as his motion for sanctions. However, his earlier motions to enforce paragraphs 3.6 and 3.17 of the parties' agreement were granted.

According to defendant, the judge's increased child support was inadequate. Defendant contends that while the judge correctly calculated the award under the Guidelines up to the maximum income amount, she did not make "appropriate findings and/or provide [her] reasoning for [her] determination regarding supplemental support in light of the plaintiff's excess income." According to defendant, the judge "randomly decided that the supplemental amount of support should be $125 per week" which was not supported by the applicable law.

We consider the parties contentions under the well settled principles that guide our review. "[O]ur review of the Family Part's determinations regarding child support is limited." Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587 (App. Div. 2016). "We 'do not disturb the factual findings and legal conclusions of the [motion] judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

"Moreover, '[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to [the judge's] fact[-]finding.'" Dever v. Howell, 456 N.J. Super. 300, 309 (App. Div.

2018) (alterations in original) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Thus, generally, findings by a motion judge are "binding on appeal when supported by adequate, substantial, credible evidence." Catabran, 445 N.J. Super. at 587 (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)).

Family Part judges apply the Guidelines when determining child support. Caplan v. Caplan, 182 N.J. 250, 264 (2005) (citing R. 5:6A). Upon a showing of good cause, the judge may modify or disregard the Guidelines. Ibid. (citing R. 5:6A). "Good cause" includes the factors specified in Appendix IX-A to the Guidelines, which permit a judge to supplement the Guidelines if the children's parents have a combined net annual income that is greater than $187,200. Pressler & Verniero, Appendix IX-A to R. 5:6A.

Specifically, the Guidelines state that under these circumstances, where a paying parent's income is in excess of the maximum Guidelines amount, "the court shall apply the [G]uidelines up to $187,200 and supplement the [G]uidelines-based award with a discretionary amount based on the remaining family income (i.e., income in excess of $187,200) and the factors specified in N.J.S.A. 2A:34-23." Ibid.

In determining whether to supplement the Guidelines-based award with a discretionary amount, a judge's decision is informed by the following general

principles. "Both parents have a shared obligation to support their children." Strahan v. Strahan, 402 N.J. Super. 298, 306 (App. Div. 2008). That duty is a continuous obligation. Caplan, 364 N.J. Super. at 90. "[W]here the parties have the financial wherewithal to provide for their children, the children are entitled to the benefit of financial advantages available to them." Isaacson v. Isaacson, 348 N.J. Super. 560, 579 (App. Div. 2002). Stated another way, "[c]hildren are entitled to not only bare necessities, but a supporting parent has the obligation to share with his [or her] children the benefit of his [or her] financial achievement." Id. at 580.

When a court's attention "is focused on the unique circumstances of the high-income earner whose ability to pay increased child support is not in issue, the dominant guideline for consideration is the reasonable needs of the children, which must be addressed in the context of the standard of living of the parties." Id. at 581 (emphasis added). "The consideration of needs must include the age and health of the children—with the understanding that infants' needs are less than those of teenagers—as well as any assets or income of the children." Strahan, 402 N.J. Super. at 307. In determining a child's needs, judges are to be vigilant, but not overindulgent. Isaacson, 348 N.J. Super. at 583.

Accordingly, "a balance must be struck between reasonable needs, which reflect lifestyle opportunities, while at the same time precluding an inappropriate windfall to the child," id. at 582, or to the custodial parent. Id. at 584. "[T]he law is not offended if there is some incidental benefit to the custodial parent from increased child support payments." Ibid. However, the law is offended when the custodial parent overreaches in the name of the benefiting child. Id. at 585.

In calculating the family's income, it is within the motion judge's discretion to impute income to a parent where appropriate. Gormley v. Gormley, 462 N.J. Super. 433, 443 (App. Div. 2019); see also Elrom v Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015). A "court is authorized to impute income for the purpose of determining child support when a parent is found to be voluntarily unemployed or underemployed without cause." Elrom, 439 N.J. Super. at 434. Under the Guidelines, such circumstances mandate imputation of income. Id. at 435. In Elrom, we explained the factors a judge must consider when deciding whether to input income. We stated the following

> Considerations involving children must be weighed when imputing income. The first factor listed by the Legislature in guiding a judicial determination of a fair child-support award is serving the "[n]eeds of the child . . . ." N.J.S.A. 2A:34-23(a)(1). Also, the Guidelines discuss the need to account for young

children's needs when imputing income to the parent of primary residence, stating:

> In determining whether income should be imputed to a parent and the amount of such income, the court should consider: (1) what the employment status and earning capacity of that parent would have been if the family had remained intact or would have formed, (2) the reason and intent for the voluntary underemployment or unemployment, (3) the availability of other assets that may be used to pay support, and (4) the ages of any children in the parent's household and child-care alternatives. . . . When imputing income to a parent who is caring for young children, the parent's income share of child-care costs necessary to allow that person to work outside the home shall be deducted from the imputed income.
>
> [Pressler & Verniero, Appendix IX-A to R. 5:6A, ¶ 12.]

> [Id. at 439.]

Applying these guiding principles to the motion judge's decision here, we discern no abuse in the judge's discretion when she recalculated support first under the Guidelines, and then by applying the statutory factors. The judge did exactly what the law requires, and her decision was amply supported by the evidence in the record. Moreover, the child support amount awarded is not a windfall to either the children or defendant, nor an attempt to fill the gap for the

alimony that had terminated, as it leaves a monthly shortfall towards defendant's monthly budget.

Also, contrary to plaintiff's contentions on appeal, while the judge relied upon his 2018 income tax return even though he supplied his 2017 return as well, the two returns did not indicate a fluctuation in gross income from his primary business. And, although the judge's decision did not indicate that she scrutinized every expense in defendant's budget, it did reflect she subjected both parties' CIS budgets to the same level of scrutiny and accepted them both as true and reasonable in light of the parties' financial situations. As to plaintiff's contention that the judge should have imputed additional income to defendant, we conclude the judge correctly rejected his demand in light of there being no evidence in the record to support a claim of underemployment, especially in light of the fact that defendant was never employed during the marriage.

We reach a similar result as to plaintiff's claim on appeal. We find no merit to her contention that the increase was insufficient. Applying our deferential standard of review, we have no cause to disturb the judge increasing the 2012 support amount from the original $500 per week to $1,000 in recognition of the passage of time, the increased age of the children, and plaintiff's increased income.

We also reach a similar conclusion as to plaintiff's remaining arguments. As to sanctions and counsel fees, the judge again did exactly what the law requires. She determined that defendant filed a legitimate application and met her burden, and, after applying the applicable rules, concluded that plaintiff's claim for counsel fees was not supported by the record in light of the fact plaintiff was not successful on several of his motions and he was in a far superior financial position.[4] Here, again we discern no abuse of discretion. R. 5:3-7(a).

As to plaintiff's remaining arguments, we conclude they are without merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, plaintiff failed to prove his transportation costs and the judge did not foreclose the issue about a parent coordinator's fees, rather she left that issue to be addressed when and if the parties actually need to retain one in the future with the understanding that they agreed to share those costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] We note that in the parties' 2012 custody and parenting time agreement, they defined the sanctions for "sabotaging" a party's contact with the children, including not complying with the agreement, to include, "among other possible sanctions and remedies, adjudicate the violating party in violation of the other party's rights, modify the existing custody and parenting time arrangement, and assess counsel fees against the violating party." Plaintiff never raised this provision, and in any event, we find no basis in the record to find that defendant was sabotaging plaintiff's rights under the agreement.

A-2666-19