**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1567-24

A.P.,[1]

      Plaintiff-Respondent/
      Cross-Appellant,

v.

D.P.,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Argued January 21, 2026 – Decided February 23, 2026

      Before Judges Gilson, Firko, and Vinci.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-1124-20.

      Bonnie C. Frost argued the cause for appellant/cross-respondent (Einhorn Barbarito Frost Botwinick Nunn & Musmanno PC, attorneys; Bonnie C. Frost and Jessie M. Mills, on the briefs).

---

[1] To safeguard their privacy, we refer to the parties and their minor children by their initials. R. 1:38-3(d).

Lizanne J. Ceconi argued the cause for respondent/cross-appellant (Javerbaum Wurgaft Hicks Kahn Wikstrom & Sinins, attorneys; Lizanne J. Ceconi and Elissa W. Levine, on the briefs).

PER CURIAM

Defendant D.P. appeals from a January 23, 2025 order entered after we remanded this matter to the Family Part to make numerical findings as to marital lifestyle, reconsider the $535 per week child support order and Mallamo[2] credit, and correct the equitable distribution award. After remand, the trial judge retired and the second judge assigned to the matter affirmed the trial judge's limited duration alimony award of $2,508 per month, the child support amount, and the Mallamo credit, and determined defendant was entitled to a further equitable distribution award of $51,562.50.

Plaintiff A.P. cross-appeals contending the second judge did not err in quantifying the marital lifestyle and Mallamo credits but erred in not recalculating those credits once the marital lifestyle had been quantified and after the alimony and child support awards were confirmed. Plaintiff argues the second judge erroneously failed to address the re-allocation of the children's expenses resulting from the termination of alimony.

---

[2] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

We affirm the second judge's decision as it relates to limited duration alimony, the Mallamo credit, and equitable distribution. We reverse and remand for further proceedings on the issue of child support as directed in this opinion.

I.

The parties are familiar with the relevant facts, which we recounted in detail in our prior decision. A.P. v. D.P., No. A-3302-21 (App. Div. June 6, 2024) (slip op. at 1-64). We instructed the judge to "quantify the marital lifestyle" and make a numerical finding pursuant to S.W. v. G.W., 462 N.J. Super. 522, 532 (App. Div. 2019). Id. at 2-3. We held the trial judge misapplied her discretion in calculating the initial alimony award because she failed to "establish[] the amount the parties needed during the marriage to maintain their lifestyle." Id. at 43 (quoting Weishaus v. Weishaus, 180 N.J. 131, 145 (2004)). "Although the trial judge reviewed each party's [case information statement (CIS)] and reduced their current lifestyle budgets based on discrepancies brought out in defendant's testimony, those calculations should have been undertaken in relation to the [trial] judge's determination of what the marital lifestyle was." Ibid.

Because we directed the trial judge to revisit the alimony calculation, we also instructed her to revisit the child support award, and defendant's request for

Mallamo credits. Id. at 46-47, 53. Our decision also required a recalculation of the equitable distribution award because the trial judge erred by including the JP Morgan marital brokerage account funds in the equitable distribution award and also ruled plaintiff was entitled to defendant's 50% share by way of a Mallamo adjustment. Id. at 62-63. Notably, the trial judge failed to consider that defendant received $17,125 as an advance on equitable distribution. Ibid.

On remand and by consent of both parties' counsel, the parties did not file certifications, and no oral argument or hearing was conducted. Both counsels submitted briefs addressing the remand issues. Neither party provided a forensic accounting or vocational expert report.

In his statement of reasons accompanying the January 23, 2025 order, the second judge reaffirmed the alimony and child support awards, the percentages allocated to other expenses for the children, and the Mallamo credit. The judge found defendant was entitled to an additional equitable distribution credit in the amount of $51,562.50, which defendant challenges on appeal. Defendant states the trial judge permitted him to remove $17,125 from marital assets in the beginning of the litigation to pay rental arrears, which would count as an advance on his future share of equitable distribution. He contends it was error for the judges thereafter to include this amount in their equitable distribution

4

calculation. In other words, defendant is claiming it was incorrect for the second judge to have used this amount as part of the parties' marital assets. Therefore, defendant contends the amount "must be treated the same as the two brokerage accounts."

Regarding alimony, the second judge noted the parties' marriage lasted four years and four months. The second judge affirmed the trial judge's initial award to plaintiff of three years of limited duration alimony in the amount of $2,508 per month, but alimony terminated eighteen months later when she remarried. The second judge determined the parties' expenses, without financial assistance from plaintiff's "wealthy" parents, was "deemed to be roughly the number expressed in [p]laintiff's CIS," $21,615 per month or $259,380 annually. The second judge found certain added expenses could be either "quantified or reasonably estimated," such as the parties' subsidized shelter expenses, costs for the nanny—now replaced by private school costs—cell phone costs, country club dues, and vacation costs paid by plaintiff's parents.

The second judge rejected defendant's argument that the marital lifestyle "should be between $587,166 and $627,476 based on an elaborate and fanciful attempt to use internet sources . . . to guesstimate the value" of some of his ex-in-laws' contributions. He determined defendant's information was "rank

5

hearsay" and unreliable.  The second judge rejected both parties' positions.  He then calculated the marital lifestyle without the financial assistance of plaintiff's parents and estimated what the parties' expenses for the items stated were based on his experience of hearing divorce cases "over the last decade and a half." Using his own "rough estimates," the second judge concluded the parties' numerical marital lifestyle was enhanced by plaintiff's parents in an additional amount of $10,731 per month for a total of $32,346 per month or $388,152 per year.

The second judge declined to amend the Mallamo credit, reasoning the trial judge based her decision "on the level of support that was paid by [d]efendant during the marriage, and not on the artificially enhanced lifestyle provided by [p]laintiff's parents."  The second judge highlighted the trial judge relied on "that portion of the lifestyle actually borne by the parties" in making her decision.  As the alimony remained the same, the second judge held there was no reason to reconsider child support.

On January 27, 2025, plaintiff's attorney wrote a letter to the second judge asking he reconsider his decision and modify his order to incorporate certain issues now contained in her cross-appeal.  The second judge responded in a letter

A-1567-24

that he was retiring and directed her to file a motion for reconsideration. The appeal and cross-appeal followed.

In his appeal, defendant argues on remand:

> (1) the second judge erred when he found the "quantifying the marital lifestyle helps not a whit in determining the appropriate level of alimony" and in reaffirming the alimony and child support awards, and the percentage allocation of other expenses without further analysis; and
>
> (2) the second judge erred in reaffirming the trial judge's determination as to Mallamo and related credits.

In her cross-appeal, plaintiff argues:

> (1) the second judge did not err in quantifying the marital lifestyle and in reaffirming the alimony and child support awards because his numerical calculation of the marital lifestyle was not arbitrary and was based on credible evidence in the record, including the analysis set forth in the judgment of divorce and statement of reasons;
>
> (2) the prior child support award was properly affirmed, however, a re-allocation of expenses resulting from the termination of alimony erroneously was not addressed;
>
> (3) the second judge did not err in reaffirming the trial judge's Mallamo and related credits but he erred in not recalculating same once the marital lifestyle had been quantified and the alimony and child support awards were confirmed;
>
> (4) following a determination on marital lifestyle, the second judge should have considered the time period

7

during which defendant failed to or inadequately supported his family to quantify the <u>Mallamo</u> credit due to plaintiff and should have offset same against the equitable distribution payment owed to him; and

(5) the second judge erred in failing to re-allocate the percentage contribution required of each party towards the children's expenses after alimony terminated and reconciled those expenses on the revised child support guidelines [(CSG)] worksheet.

## II.

We do not disturb "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice." <u>Cesare v. Cesare</u>, 154 N.J. 394, 412 (1998) (citing <u>Rova Farms Resort, Inc. v. Invs. Ins. Co.</u>, 65 N.J. 474, 484 (1974)). Legal conclusions are reviewed de novo. <u>Ricci v. Ricci</u>, 448 N.J. Super. 546, 565 (App. Div. 2017).

"It is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court." <u>Tomaino v. Burman</u>, 364 N.J. Super. 224, 232 (App. Div. 2003) (citing <u>Reinauer Realty Corp. v. Borough of Paramus</u>, 34 N.J. 406, 415 (1961)). Adherence to instructions on remand "precisely as it is written" is the "peremptory duty" of a trial court. <u>Id.</u> at 233

A-1567-24

(quoting Jersey City Redevelopment Agency v. Mack Props. Co. No. 3, 280 N.J. Super. 553, 562 (App. Div. 1995)).

While trial judges have the "privilege" to disagree, they are "bound to follow the rulings and orders of the Appellate Division; they are not free to disregard them." Ibid. (citing Kosmin v. N.J. State Parole Bd., 363 N.J. Super. 28, 40 (App. Div. 2003)). "Indeed, the very essence of the appellate function is to direct conforming judicial action." Ibid. (citing In re Plainfield-Union Water Co., 14 N.J. 296, 303 (1954)). Appellate court instructions are "binding[,]" and the trial court "has no choice but to follow those instructions irrespective of its private view as to their soundness." Id. at 234.

The Appellate Division will not disturb an alimony award if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001). "[T]he appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Martindell v. Martindell, 21 N.J. 341, 355 (1956).

Therefore, the decision of a Family Part judge to modify or not modify alimony is reviewed under an abuse of discretion standard, meaning we analyze

whether a judge "failed to consider all of the controlling legal principles, made mistaken findings, or reached a conclusion that could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole." J.E.V. v. K.V., 426 N.J. Super. 475, 485 (App. Div. 2012); Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015).

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). When reviewing an appeal regarding the allocation of eligible assets in equitable distribution, "an appellate court may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion." Borodinsky v. Borodinsky, 162 N.J. Super. 437, 444 (App. Div. 1978). See Slutsky v. Slutsky, 451 N.J. Super. 332, 355 (App. Div. 2017) (a Family Part judge has broad discretion in allocating assets subject to equitable distribution). With these principles in mind, we now address the parties' contentions.

A-1567-24

## A.

## Marital Lifestyle

Defendant argues the second judge did not follow our remand instructions because he did not adequately consider and quantify the financial contributions plaintiff's parents made to support the marital lifestyle and failed to evaluate "whether there are sufficient presently available funds to sustain the marital standard," citing Weishaus, 180 N.J. at 145. Defendant maintains the judge must look at the parties' actual standard of living and not "extrapolate" a sensible lifestyle as directed in Weishaus. Ibid.

Defendant points out that his income alone was insufficient to fund the expenses set forth in plaintiff's CIS budget, which, at a 35% tax rate, implies a gross marital income of $338,585 per year. Defendant claims this amount exceeded his adjusted gross income in calendar years 2017-2020, and the mathematics show plaintiff's parents paid for a "significant" portion of the parties' expenses. Defendant maintains the second judge failed to consider the marital lifestyle figure in his CIS, which included line items paid for by plaintiff's parents.

Defendant requests a remand and a plenary hearing to address the financial contributions plaintiff's parents made to the marital lifestyle. According to

11

defendant, plaintiff's post-judgment lifestyle warrants consideration in this analysis because she is still living a lavish lifestyle, while his lifestyle has "plummeted" to a two-bedroom apartment, and therefore, such a disparity should factor into the alimony calculation. We are unpersuaded.

Here, we conclude the second judge complied with our mandate, and his numerical calculation of the marital lifestyle was not arbitrary. His decision was based on credible evidence in the record and complied with the requirements of S.W., 462 N.J. Super. at 531-34.

S.W. elaborates as to what an analysis of factor four under the statutory alimony factors requires. N.J.S.A. 2A:34-23(b)(4). This factor requires a judge to consider "[t]he standard of living established in the marriage . . . and the likelihood that each party can maintain a reasonably comparable standard of living, with neither party having a greater entitlement to that standard of living than the other." Ibid. (emphasis added). Factor four "does not signal the Legislature intended income equalization or a formulaic application in alimony cases, even where the parties spent the entirety of their income." S.W., 462 N.J. Super. at 533.

In S.W., we reversed the trial court because it "disregarded the marital budget altogether and instead supplemented defendant's current budget with

some expenses she once enjoyed during the marriage." Id. at 532. We explained:

> [c]ontained in most marital budgets are expenses, which may not be associated with either the alimony payor or payee, including those associated with children . . . <u>whose expenses are met by an asset or a third-party source having no bearing on alimony</u>. There are also circumstances where an expense is unrelated to either the payor or the payee but is met by that party on behalf of a child . . . [t]herefore, after finding the marital lifestyle, a judge must attribute the expenses that pertain to the supported spouse. Only then may the judge consider the supported spouse's ability to contribute to his or her own expenses and the amount of alimony necessary to meet the uncovered sum.
>
> [Id. at 533-34 (emphasis added).]

In calculating the amount of alimony, we instructed:

> [i]n a contested case, a trial judge may calculate the marital lifestyle utilizing the testimony, the CISs required by Rule 5:5-2, expert analysis, if it is available, and other evidence in the record. The judge is free to accept or reject any portion of the marital lifestyle presented by a party or an expert, or calculate the lifestyle utilizing any combination of the presentations.
>
> [Id. at 532.]

Once the marital lifestyle has been quantified, the trial court has to identify the source of the funds that supported that lifestyle. Weishaus, 180 N.J.

at 145. When a reviewing court is assessing a trial court's determination as to the standard of living enjoyed by the parties during the marriage:

> the court should <u>review the adequacy and reasonableness of the support award against this finding</u>. [This is required] even in situations of reduced circumstances, when the one spouse's income, or both spouses' incomes in combination, do not permit the divorcing couple to live in separate households in a lifestyle reasonably comparable to the one they enjoyed while living together during the marriage.
>
> [<u>Crews v. Crews</u>, 164 N.J. 11, 26 (2000) (emphasis added).]

Utilizing the evidence from the parties' divorce trial—which was not supplemented or amended on remand—the second judge relied on the parties' CISs and testimony in finding plaintiff's budget had a "shortfall of $9,127.33," while defendant had a "windfall of $4,111.67 each month." That difference was halved in arriving at the limited duration alimony number, "[k]nowing" that plaintiff's parents may continue to enhance her—and the children's—lifestyle above her means, and which "has no effect on this number."

Moreover, the second judge accepted the trial judge's imputation of $40,400 annually to plaintiff for purposes of calculating alimony and child support. Defendant did not present any vocational or other expert report to refute the $40,400 imputation, which was properly based on the New Jersey

Occupational Wage Guidelines. Thus, the second judge properly adopted the trial judge's analysis of the parties' financial circumstances, their CISs, and Schedule A, B, and C expenses, as he conducted an adequate analysis instructed by S.W., 462 N.J. Super. at 532-33.

We hold the second judge followed our mandate and complied with S.W. He also considered both parties' CIS statements of record, the trial judge's findings, and the trial testimony of the parties—the only witnesses who testified. Ibid. Further, the second judge considered the contributions made to the marital lifestyle by plaintiff's parents and quantified it numerically. This was proper in light of the fact the parties did not proffer any sophisticated expert opinion following remand. Therefore, we conclude the second judge's numerical calculation of the parties' marital lifestyle comported with S.W. and was not arbitrary, as it was based on substantial credible evidence in the record.

Although S.W. mentions an alimony award represents the standard of living during the marriage of how the couple actually lived, including whether they "resorted to borrowing," or used "parental support," it also emphasizes to consider whether parties limited themselves to their earned income. 462 N.J. Super. at 531 (quoting Glass v. Glass, 366 N.J. Super. 357, 371 (2004)). In S.W., we directed judges to "consider the supported spouse's ability to contribute

to his or her own expenses and the amount of alimony necessary to meet the uncovered sum." Id. at 534 (emphasis added).

Applying these principles here, we are satisfied both judges considered plaintiff's ability to contribute to her own expenses—as she does not work—and the fact her parents are not required to support her, even if they did in the past. The second judge aptly stated:

> It is also equally apparent that the parties also had expenses monthly that they paid without contribution of [p]laintiff's parents . . .
>
> . . . The simple fact is that during the marriage the parties utilized [d]efendant's income to pay the majority of their living expenses. Defendant cannot argue that he should be relieved of an alimony obligation because [plaintiff's parents], in their discretion, may continue to support their daughter.

Accordingly, as required by S.W., after numerically quantifying the marital lifestyle, the second judge's finding of marital lifestyle was "made by explaining the characteristics of the lifestyle and quantifying it," as he adopted the findings made by the trial judge and made his own independent conclusions. 462 N.J. Super. at 532. We reiterate "[t]he judge is free to accept or reject any portion of the marital lifestyle presented by a party or an expert or calculate the lifestyle utilizing any combination of the presentations." Ibid.

16

We reject defendant's argument that on remand the second judge was required to conduct a full statutory alimony analysis with a focus on the "need and ability to pay" and "standard of living" factors. Defendant argues the trial judge previously found plaintiff did not demonstrate a need for alimony and noted it was "impossible" to determine her need due to the "generous gifts" that enhanced her lifestyle. He emphasizes plaintiff testified she does not want to become employed, but was nonetheless erroneously awarded alimony by both judges. Defendant contends the second judge then replicated the trial judge's error in awarding limited duration alimony to plaintiff.

Likewise, we reject defendant's argument that the second judge did not analyze whether the parties would be able to maintain a lifestyle comparable to the one established during the marriage. Defendant argues his income will not permit him to maintain a lifestyle of $32,346 net per month because the second judge found he earns $16,666 gross per month. In defendant's view, the second judge erred by allowing plaintiff to have a post-marital standard of living that is much greater than his, citing N.J.S.A. 2A:34-23(b) (neither party has a "greater entitlement" to the marital standard of living than the other).

Contrary to defendant's argument, the trial judge applied all of the N.J.S.A. 2A:34-23(b) alimony factors. A.P., slip op. at 36-44. We then affirmed

that an award of limited durational alimony was proper. However, we remanded for the marital lifestyle to be numerically quantified before establishing and as here, ultimately reinforcing the amount of the award. The second judge explicitly found the marital lifestyle was $21,615 per month plus the additional amount of $10,731 contributed by plaintiff's parents. The record supports that determination.

## B.

## Child Support and Percentage Allocation

Next, defendant argues the second judge erred by affirming the prior child support award and percentage allocation of other expenses without further analysis. He contends the "subsequent alimony number drives child support" and his contribution to the children's expenses. He maintains the "needs of the child[ren]," a factor contained in N.J.S.A. 2A:34-23(a), must be addressed within the context of the parties' standard of living, citing Isaacson v. Isaacson, 348 N.J. Super. 560, 581 (App. Div. 2002). According to defendant, given the "enormous economic disparity" that exists in this case, the parent of primary residence designation should be viewed as a "subordinate criterion" to the parties' standard of living, consistent with the income-oriented child support methodology set forth in Caplan v. Caplan, 182 N.J. 250 (2005).

A-1567-24

Defendant reprises his argument made in his initial appeal that the trial judge initially erred by ordering him to pay an above guidelines child support amount without considering the economic benefits the children receive from plaintiff's parents. On remand, defendant avers the second judge erred by not reconsidering child support and applying the principles espoused in Caplan, 182 N.J. at 272. According to defendant, plaintiff's parents' commitment to financially assisting the children is "evident" from the "numerous trusts" they have established for this purpose.

Similarly, plaintiff argues in her cross-appeal that we directed on remand that child support be recalculated if the alimony award was changed after the marital lifestyle was numerically quantified. Relevant here, plaintiff remarried on October 7, 2023, and defendant's obligation to pay her alimony terminated as required by law. However, the second judge did not prepare an updated CSG worksheet to reflect the termination, and that defendant is relieved of that financial obligation.

"The trial court has substantial discretion in making a child support award." Tannen v. Tannen, 416 N.J. Super. 248, 278 (App. Div. 2010). Therefore, child support awards and modifications are left to the sound discretion of the trial court, and we are limited to determining whether there was

19

an abuse of discretion. <u>J.B.</u>, 215 N.J. at 325-26 (quoting <u>Jacoby</u>, 427 N.J. Super. at 116). A child support determination will not be set aside unless shown to be "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." <u>Ibid.</u>

The court must attach a CSG worksheet to its decision and also provide a statement of reasons. <u>Fodero v. Fodero</u>, 355 N.J. Super. 168, 170 (App. Div. 2002). <u>Rule</u> 5:6A provides the CSG "shall be applied [in] an application to establish . . . child support" and may only be modified for good cause shown. Pursuant to N.J.S.A. 2A:34-23(a), in "determining the amount to be paid by a parent for support of the child or children and the period during which the duty of support is owed, the court in those cases not governed by court rule shall consider, but not be limited to, the following factors:"

> (1) Needs of the child;
>
> (2) Standard of living and economic circumstances of each parent;
>
> (3) All sources of income and assets of each parent;
>
> (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing child care and the length of time and cost of each parent to obtain training or experience for appropriate employment;

(5) Need and capacity of the child for education, including higher education;

(6) Age and health of the child and each parent;

(7) Income, assets[,] and earning ability of the child;

(8) Responsibility of the parents for the court-ordered support of others;

(9) Reasonable debts and liabilities of each child and parent; and

(10) Any other factors the court may deem relevant.

[N.J.S.A. 2A:34-23(a).]

However, where the family's income exceeds $187,200, "the court shall apply the guidelines up to $187,200 and supplement the guidelines-based award with a discretionary amount based on the remaining family income" together with the factors specified in N.J.S.A. 2A:34-23. Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, ¶ 20, (2026). See also Isaacson, 348 N.J. Super. at 581 (the "maximum amount provided for in the guidelines should be 'supplemented' by an additional award determined through application of the statutory factors"). Therefore, when the total income of the parties exceeds the guidelines, it is well within a judge's discretion to determine "the choice of the methodology to employ in arriving at a child support award." Caplan, 182 N.J. at 272. This recognizes the "goal is

21

to calculate a child support award that is in the best interest of the child after giving due consideration to the statutory factors and the guidelines." Ibid.

In Caplan v. Caplan, 364 N.J. Super. 68, 89-90 (App. Div. 2003), a detailed process for determining child support in high-income families was set forth:

> First, the reasonable needs of the children must be determined. . . .
>
>        . . . .
>
> Second, because there must be a fair and appropriate allocation of the children's needs between the parties, the ability of the parties to generate earned income, in addition to unearned income, must be determined.
>
>        . . . .
>
> Third, upon determining the respective percentage of each party's net imputed earned and unearned income of their total combined net imputed earned and unearned income, those percentages shall be applied to determine each party's share of the maximum basic [CSG] award for two children.
>
>        . . . .
>
> Fourth, the maximum basic child support amount . . . should be subtracted from the court-determined reasonable needs of the children to determine the remaining children's needs to be allocated between the parties. Then, the court must analyze the factors outlined in N.J.S.A. 2A:34-23(a) and determine each

A-1567-24

party's responsibility for satisfying those remaining needs.

[Caplan, 364 N.J. Super. at 89-90 (emphasis omitted).]

The trial judge ordered defendant to pay plaintiff $535 per week in child support, and to maintain life insurance in the amount of $600,000 to support that obligation and rejected defendant's claim for child support. On appeal, we concluded the trial judge conducted a thorough analysis of each of the N.J.S.A. 2A:34-23(a) factors in her statement of reasons, and she attached a CSG worksheet to her decision. Using the CSG, the trial judge calculated the base award using defendant's income of $279,000 per year, and plaintiff's imputed income of $40,400, was $434 per week. The trial judge then calculated a supplemental award of 10% of defendant's earnings, ($27,900) or $535 per week. Defendant was ordered to pay 69% of all unreimbursed medical expenses and extracurricular activities, including summer camp, for the three children. Plaintiff was ordered to pay the other 31%.

In light of our decision affirming the alimony award, we hold defendant's child support obligation shall remain at $535 per week through October 7, 2023, when plaintiff remarried. We also affirm the 69%/31% allocation of expenses through October 7, 2023. However, we reverse and remand for a different family judge to recalculate child support and the allocation of expenses from

23

October 7, 2023, to the present. The parties shall submit updated CISs with pertinent documentation attached. We reiterate our prior ruling that defendant is not entitled to discovery in relation to or to subpoena any trust information. A.P., slip op. at 33-36. The new trial judge shall determine whether a hearing is required. We express no opinion as to what the outcome should be.

## C.

### Mallamo Credit

On remand, the second judge considered the "drastically different result" each party sought. In his decision, he declined to change the trial judge's decision on the Mallamo credit, reasoning her decision was "based . . . on the level of support that was paid by [d]efendant during the marriage, and not on the artificially enhanced lifestyle provided by [p]laintiff's parents." The second judge held:

> By way of example, [the trial judge] ordered [d]efendant to pay the [S]chedule A expenses that the parties were accustomed to paying pursuant to their lease for the property, plus $1,667 for other expenses. Thus, in making her decision, she was relying on that portion of the lifestyle actually borne by the parties. To do otherwise would have made no sense. If the [pendente lite] support was based on the enhanced lifestyle, that would have resulted in [d]efendant having to pay support in excess of what they did, or likely could have done, during the marriage. Similarly, if she used the support of [plaintiff's parents] to reduce his

24

obligation, that would have undermined the whole concept of pendente lite support.

In his appeal, defendant argues plaintiff was unjustly enriched, as the trial judge offset the unpaid arrears with an amount that exceeded the amount he owed. The trial judge was compelled to provide plaintiff with a Mallamo credit of $36,516 based on unpaid pendente lite support. However, because plaintiff, in the beginning of the litigation, unilaterally withdrew $86,810 from the parties' joint JP Morgan account, the trial judge found 50% of this amount, or $41,405, belonged to defendant. Therefore, due to defendant's nonpayment of the $36,516 in pendente lite support, the trial judge did not order plaintiff to reimburse defendant the $41,405. As stated, defendant believes plaintiff was unjustly enriched in this manner, and he is owed the difference of $4,889.

Further, defendant argues plaintiff should be ordered to pay him a Mallamo credit of $153,163 for his overpayment of pendente lite support solely in relation to Schedule A expenses. Defendant argues this number represents 100% of the Schedule A expenses the trial judge ordered him to pay while he was in the marital home, from the date of the pendente lite order—April 22, 2020—to the judgment's commencement date—May 1, 2022. Therefore, defendant maintains the original award of payment to plaintiff for her Schedule A expenses of $6,303 per month for 24.3 months was error.

Defendant also challenges the original pendente lite support award of $1,666 per month, for 24.3 months, but does not seek a <u>Mallamo</u> credit for this portion. Instead, defendant points out that his income in 2020 was $178,333, yet the trial judge's order required him to pay $193,647 in total for both the support order and the Schedule A expenses. He also contends plaintiff's father "orchestrated a scenario" whereby she misrepresented she was "in need," and that defendant was "not supporting his family," meanwhile, plaintiff's father continued his cash transfers to plaintiff and had not "cut them off."

Defendant asserts plaintiff failed to prove the amount she received in pendente lite support was "woefully inadequate," which is the basis for a <u>Mallamo</u> credit. <u>Slutsky</u>, 451 N.J. Super. at 369. Once again, defendant does not seek a <u>Mallamo</u> credit for the unallocated pendente lite support of $1,666 per month for 24.3 months, totaling $40,484, as he "accepts the obligation to pay" this portion, but seeks a credit regarding the Schedule A portion, or $153,163.

In contrast, in her cross-appeal, plaintiff argues she is owed $88,573.49 for the following credits: $62,619 in <u>Mallamo</u> credit (as opposed to the trial judge's award of $37,313); $18,468.95 for reimbursement of Schedule A expenses ordered and unpaid in accordance with the final judgment of divorce;

26

and $7,485.54 to equalize the marital bank accounts. Accordingly, because defendant already paid $63,944 of this amount, the balance he owes plaintiff is $24,629.29.

Plaintiff contends that once the second judge quantified the marital lifestyle and confirmed the alimony and child support amounts, the Mallamo credit should have been appropriately recalculated. She asserts the trial judge failed to include the automobile insurance defendant was ordered to pay, which amounted to $226 per month. Plaintiff also argues that defendant owes her arrearages due to the affirmed child support and alimony amounts on remand, although both were the same amounts originally awarded when the judgment was entered. Plaintiff deducted the amount defendant was already paying to come to the numerical value she is allegedly owed.

In analyzing a request for a Mallamo adjustment, the judge must consider whether the amount of pendente lite support paid "was consistent with the marital lifestyle." Slutsky, 451 N.J. Super. at 369. "Any changes in the initial orders rest with the trial judge's discretion" and are therefore reviewed under an abuse of discretion standard. Id. at 368. Applying these principles here, we are convinced the second judge properly affirmed the trial judge's Mallamo credit award based on the level of support paid by defendant during the marriage, not

27

the artificially enhanced lifestyle provided by plaintiff's parents, and therefore there was no abuse of discretion. The second judge provided a rational explanation for affirming the Mallamo credit.

To the extent the parties' briefs raise any additional arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

In sum we:

> (1) affirm the limited duration alimony award;
>
> (2) affirm the Mallamo credit;
>
> (3) affirm the equitable distribution award; and
>
> (4) reverse and remand the January 23, 2025 order insofar as it relates to child support and direct entry of an appropriate child support order consistent with our opinion.

Affimed in part; vacated; reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

28